No. 15-1575C
(Judge Wheeler)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BRYNDON FISHER

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO DISMISS

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

STEVEN J. GILLINGHAM
Assistant Director

PETER A. GWYNNE
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-8239
Facsimile: (202) 514-8640
E-mail: peter.a.gwynne@usdoj.gov

June 15, 2016                          Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................................................ii

BACKGROUND ............................................................................................................................... 1

ARGUMENT ...................................................................................................................................... 5

    I.     STANDARD OF REVIEW ...................................................................................... 5

    II.    PLAINTIFF HAS NOT ALLEGED A CONTRACTUAL DUTY OR A BREACH .................................................................................................................. 6

    III.   PLAINTIFF'S IMPLIED BREACH CLAIM IS DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM...................................................................... 11

    IV.   PLAINTIFF HAS NOT ALLEGED A STATUTORY REMEDY THAT SUPPORTS AN ILLEGAL EXACTION CLAIM.................................................... 13

CONCLUSION................................................................................................................................ 16

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................ 5, 6, 7, 8

*Barnes v. United States,*
  122 Fed. Cl. 581 (2015) ................................................................................................ 5

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................................. 5, 6, 7

*Bell/Heery v. United States,*
  739 F.3d 1324 (Fed. Cir. 2014)...................................................................................... 12

*Bowers Investment Co. v. United States,*
  695 F.3d 1380 (Fed. Cir. 2012)........................................................................................ 6

*Centex Corp. v. United States,*
  395 F.3d 1283 (Fed. Cir. 2005)................................................................................. 11, 12

*Century Exploration New Orleans, LLC v. United States,*
  745 F.3d 1168 (Fed. Cir. 2014)...................................................................................... 12

*Cyprus Amax Coal Co. v. United States,*
  205 F.3d 1369 (Fed. Cir. 2000)...................................................................................... 13

*Estes Exp. Lines v. United States,*
  739 F.3d 689 (Fed. Cir. 2014)........................................................................................ 5

*Kawa v. United States,*
  77 Fed. Cl. 294 (2007) ................................................................................................... 6

*Kellogg Brown & Root Servs., Inc. v. United States,*
  109 Fed. Cl. 288 (2013) .......................................................................................... 12, 13

*Kipple v. United States,*
  102 Fed. Cl. 773 (2012) ................................................................................................ 13

*McKart v. United States,*
  395 U.S. 185 (1969)........................................................................................................ 9

*Norman v. United States,*
  429 F.3d 1081 (Fed. Cir. 2005)................................................................................. 13, 15

*O'Shea v. Littleton,*
  414 U.S. 488 (1974)...................................................................................................... 10

*Park Properties Associates, L.P. v. United States,*
    82 Fed. Cl. 162 (2008) ........................................................................... 8

*Precision Pine & Timber, Inc. v. United States,*
    596 F.3d 817 (Fed. Cir. 2010) ............................................................... 12

*San Carlos Irrigation & Drainage Dist. v. United States,*
    877 F.2d 957 (Fed. Cir. 1989) ................................................................. 6

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ............................................................................... 10

*Thomson Consumer Elecs., Inc. v. United States,*
    247 F.3d 1210 (Fed. Cir. 2001) ............................................................... 9

## **Statutes**

28 U.S.C. § 1346 ......................................................................................... 3

28 U.S.C. § 1491 ....................................................................................... 13

28 U.S.C. § 1913 ....................................................................................... 15

## **Rules**

RCFC 12 ........................................................................................... 5, 6, 13

## **Other Authorities**

13 *Williston on Contracts* § 38:7 ................................................................. 7

*Federal Practice and Procedure* § 1357 (3d ed. 2008) ................................. 6

_____

|                          |   |
|--------------------------|---|
| BRYNDON FISHER,          | ) |
|                          | ) |
| Plaintiff,               | ) |
|                          | ) |
| v.                       | ) |
|                          | ) |
| THE UNITED STATES,       | ) |
|                          | ) |
| Defendant.               | ) |

_____  )

No. 15-1575C
(Judge Wheeler)

## **DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits this motion to dismiss plaintiff Bryndon Fisher's amended complaint for failure to state a claim for which relief can be granted, because plaintiff failed to comply with the conditions of the alleged contract and alleged an implied duty claim that is indistinguishable from his contractual claim. Also, the defendant has not stated a claim and lacks jurisdiction for his illegal exaction claim because he has not alleged a regulatory framework that provides a monetary remedy for his claims. The purported contract and framework requires plaintiff to submit claims for all alleged errors in billing within 90 days of the date of the bill to the Public Access to Court Electronic Records (PACER) Service Center. Because he has not alleged that he has done so, plaintiff has failed to state a claim upon which relief can be granted.

## **BACKGROUND**

PACER is an electronic public access service that allows users to obtain case and docket information online from Federal appellate, district, bankruptcy courts, and the PACER Case Locator. Am. Compl. ¶ 9, ECF No. 9-1; https://www.pacer.gov/. "PACER is provided by the

Federal Judiciary in keeping with its commitment to providing public access to court information via a centralized service." *Id.* To that end, PACER allows users to access court documents for $0.10 per page, up to a maximum charge of $3.00 per transaction. *Id.* ¶ 2. Plaintiff does not dispute that PACER accurately calculates the number of pages, and therefore the appropriate charges, when documents are filed in .pdf format. Plaintiff notes that for an HTML-formatted report, such as a docket report, PACER charges based on the "bytes extracted" for a docket sheet "before the document is reformatted as a webpage." *Id.* ¶¶21-25.

Plaintiff claims that when a user seeks a docket report, PACER "uses a formula" that miscalculates the number of bytes in each "extracted page," and an overcharge results. *Id.* ¶¶ 1-3. Plaintiff alleges that over the past two years, he accessed 184 court dockets and paid a total of $109.40, representing an alleged overcharge of $37.00. *Id.* ¶¶ 31-32. Plaintiff alleges that he has retained "expert consultants" and that the investigation conducted by these experts found that "the PACER system actually miscalculates the number of extracted bytes in a docket report, resulting in an overcharge to users." *Id.* ¶ 37. Plaintiff does not explain how he or his experts calculated or obtained the number of bytes that were extracted by PACER before reformatting the docket sheets accessed by plaintiff.

Based on those alleged overcharges, plaintiff asserts class action claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and illegal exaction. *Id.* ¶¶ 50-79. The purported class of users contains "All PACER users who from December 28, 2009 through present . . . were charged for at least one docket report in HTML format that included a case caption containing 850 or more characters." *Id.* ¶ 41.[1] The plaintiff claims that

---

[1] The class excludes the "United States government and the agencies and officers thereof and any judges, justices, or judicial officers presiding over this matter, the members of their immediate families, and their judicial staff." *Id.* ¶ 42.

the alleged contract that has been breached "incorporated the terms provided to Plaintiff and the Class during the registration process for PACER, including the PACER User Manual." *Id.* ¶ 52.

The terms provided to all PACER users during the registration process include a requirement that users "must alert the PACER Service Center to any errors in billing within 90 days of the date of the bill." https://www.pacer.gov/documents/pacer_policy.pdf (PACER Policies). Similarly, the PACER User Manual states, "If you think there is an error on your bill, you must submit the Credit Request Form. Requests may also be faxed to the PACER Service Center at (210) 301-6441." https://www.pacer.gov/documents/pacermanual.pdf (PACER User Manual) at 5.[2] The Credit Request Form requires users to "Complete this form and submit it along with a letter of explanation in support of the credit request." It also requires users to provide a "detailed explanation in support of the request for credit," a "list of transactions in question" and a "completed refund request form[3] if payment has been made on the account." Plaintiff does not allege that he, or any other member of the purported class, submitted any claim to the PACER Service Center for the overcharges he alleges in his complaint.

On December 29, 2015, the day after filing his complaint in this Court, plaintiff filed a complaint in the United States District Court for the Western District of Washington. *See* Complaint, ECF No. 1*, Fisher v. Duff,* 3:15-cv-05944 (W.D. Wash) (Settle, J.) (Washington Complaint). In the Washington Complaint, plaintiff claimed that he was overcharged by PACER for $37.00 in docket reports and brings a class action for breach of contract and illegal exaction under 28 U.S.C. § 1346(a)(2), the "Little Tucker Act." *See id.* ¶¶ 1-6, 39-65. The purported class in the Washington Complaint excludes PACER users who have been damaged in excess of

---

[2] The Pacer User Manual contains a link to the Credit Request Form. *Id.* (https://www.pacer.gov/documents/creditreqform.pdf).

[3] The refund form is available at https://www.pacer.gov/documents/PSC_RefundForm.pdf.

$10,000 by the alleged billing errors.  *Id.* ¶ 39.  On March 7, 2016, the Government moved to

dismiss the Washington Complaint, in part because the complaint in this Court was the first-

filed, and because plaintiff had failed to state a claim for which relief could be granted based on

his failure to submit claims for any alleged overcharges to the PACER Service Center, as was

required by the alleged contract.  *See* Mot. to Dismiss, ECF No. 14, *Fisher v. Duff,* 3:15-cv-

05944 (W.D. Wash).  Instead of replying to the motion to dismiss, plaintiff amended the

Washington Complaint on March 28, 2016 (Washington Amended Complaint), to include a

claim for breach of an alleged duty of good faith and fair dealing in the purported contract.  *See*

*id.*, ECF No. 16.  On April 6, 2016, the Government moved to dismiss the Washington Amended

Complaint for essentially the same reasons it had moved to dismiss the original complaint.  *See*

*id.*, ECF No. 17.  That motion has been fully briefed and is currently pending before the District

Court for the Western District of Washington.

On April 11, 2016, the United States filed a motion to dismiss the original complaint in

this case, for lack of jurisdiction related to the illegal exaction claim, and for failure to state a

claim related to the entire complaint.  On May 18, 2016, rather than respond to the motion,

Plaintiff amended the complaint (CFC Amended Complaint).  ECF No. 9-1.  Like the original

complaint, the CFC Amended Complaint asserts class action claims for breach of contract and

illegal exaction.  CFC Am. Compl., ECF No. 9-1 ¶¶ 50-59; 70-79.  It also includes a new claim

for breach of the implied covenant of good faith and fair dealing.  *Id.* ¶¶ 60-69.  This new claim

alleges that the United States breached the implied covenant by overcharging for docket reports

and by "miscounting" the number of extracted bytes in each docket.  *Id.* ¶ 68.

In the CFC Amended Complaint, plaintiff also includes for the first time an allegation

that one PACER user, Carl Malamud, submitted a Credit Request Form to the PACER Service

Center for reimbursement of certain overcharges.  *Id.* ¶ 26.  Plaintiff claims that Mr. Malamud provided the Administrative Office of the United States Courts (AO) with information related to the same purported billing errors that are alleged in the CFC Amended Complaint.  The CFC Amended Complaint does not allege that Mr. Malamud did not receive an explanation as to why his claim that he was being overcharged was incorrect.  In fact, Mr. Malamud stated publicly on January 3, 2016 that the AO did provide him with an explanation as to why his bill was correct.  @carlmalamud, Twitter (Jan 3, 2016, 8:17PM) https://twitter.com/carlmalamud/status/ 683917949502005249.  Plaintiff also fails to allege that Mr. Malamud's claim for reimbursement was rejected by the AO.[4]

## ARGUMENT

### I.  STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(1), the Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff."  *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). The plaintiff has the burden of proof to establish subject matter jurisdiction by a preponderance of the evidence.  *Id.* at 692.

Pursuant to Rule 12(b)(6), the Court may dismiss plaintiff's complaint if it fails to state a claim upon which relief can be granted.  RCFC 12(b)(6).  In order to defeat a Rule 12(b)(6) motion, plaintiffs must assert "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Barnes v. United States*, 122 Fed. Cl. 581, 582 (2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

---

[4]  Plaintiff cannot make such an allegation because even though the AO confirmed that the billed charges were accurate, Mr. Malamud received a $.40 refund.

of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion under RCFC 12(b)(6), courts may consider "'matters incorporated by reference or integral to the claim,' other matters appearing in the record of the case, and matters of public record of which the court can take judicial notice." *Bowers Inv. Co., LLC v. United States*, 104 Fed. Cl. 246, 253 (2011) *aff'd*, 695 F.3d 1380 (Fed. Cir. 2012) (quoting *Kawa v. United States*, 77 Fed. Cl. 294, 307 (2007)); *see* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2008).

## II.    PLAINTIFF HAS NOT ALLEGED A CONTRACTUAL DUTY OR A BREACH

Plaintiff claims that a contract was created when he registered for a PACER account. CFC Am. Compl. ¶ 51.  "This contract incorporated the terms provided to Plaintiff and the Class during the registration process for PACER, including the PACER User Manual."  *Id.* ¶ 52. Plaintiff asserts that the Government breached this alleged contract when, due to an alleged "miscounting," it erroneously overbilled users.  *Id.* ¶ 58.  However, the plain language of plaintiff's alleged contract requires users to submit any potential claim due to errors in billing to the PACER Service Center within 90 days of the date of the bill in question.  PACER Policy; PACER User Manual at 5.  Because plaintiff and the purported class have not done so, they have failed to state a claim for breach of contract.

"To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach."  *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).  Here, the plain language of the alleged contract requires users to submit potential claims for billing errors to the PACER Service Center within

"90 days of the date of the bill," and requires them to complete and submit the Credit Request Form in order to receive a refund for any billing error. Accordingly, any contractual duty to refund users for alleged billing errors is limited to claims that were properly submitted in accordance with the alleged contract. Any claim that the Government breached its obligations under the alleged contract is similarly limited by the contract itself to those alleged breaches that were properly submitted to the PACER Service Center in accordance with the alleged contract. The complaint, however, is silent as to whether plaintiff has ever submitted any claim whatsoever to the PACER Service Center. Because plaintiff has not alleged a duty arising out of the contract, or a breach of any such duty, the Court should dismiss the complaint.

Essentially, the submission of claims to the PACER Service Center is, by the plain terms of the alleged contract, a condition precedent to any duty to refund billing errors. *See* 13 *Williston on Contracts* § 38:7 (4th ed.) ("A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or a contractual duty arises.") Because plaintiff has not alleged that this condition precedent was performed, it has not stated a claim for breach of contract.[5]

After being presented with the Government's original motion to dismiss, plaintiff attempts to cure his defective breach of contract claim by invoking the doctrine of prevention, alleging that he was "excused" from submitting claims by "impractibility" or "hindrance" by the Government. CFC Am. Compl. ¶ 33. These efforts are insufficient to avoid dismissal.

This Court has explained that the doctrine of prevention may excuse performance of a

---

[5] Plaintiff's recitation that he and the purported class "performed their duties under the contract or were excused from doing so," Compl. ¶ 53, is insufficient to withstand a motion to dismiss. *See Ashcroft*, 556 U.S. at 678 (complaints that plead only "a formulaic recitation of the elements of a cause of action" or "naked assertions" devoid of "further factual enhancement" are insufficient to meet the proper pleading standard) (quoting *Twombly*, 550 U.S. at 555, 557).

condition, where the other party has caused the failure to perform. "Where a party's breach by non-performance contributes materially to the nonoccurrence of a condition of one of his duties, the non-occurrence is excused." *Park Properties Associates, L.P. v. United States*, 82 Fed. Cl. 162, 171 (2008) (quoting Restatement (Second) of Contracts § 245 (1981)). This doctrine is limited to situations where the alleged lack of cooperation constitutes a breach. Restatement (Second) of Contracts § 245 (1981). In addition, "[t]here is no breach if the risk of such a lack of cooperation was assumed by the other party or if the lack of cooperation is justifiable." *Id.*

As an initial matter, plaintiff provides no explanation or description of how exactly the Government hindered or concealed these alleged errors from him, and instead relies only upon the naked assertion that such a hindrance occurred and a formulaic recital of the elements of the doctrine. This is not enough to avoid dismissal. *See Ashcroft*, 556 U.S. at 678.

In addition, plaintiff provides no explanation of why he did not attempt to submit his claims to the PACER Service Center once he became aware of the alleged error. Accepting, as we must, the factual allegations of the CFC Amended Complaint, after the conclusion of his "investigation," plaintiff was fully aware of the alleged billing errors. Yet he still never submitted any claims to the PACER Service Center *after* it would have been "practical" to do so, and he was no longer "hindered" in doing so. Per the plain terms of the alleged contract, the Government was obligated to pay only those claims that were properly submitted. Plaintiff's failure to submit any claim, even after obtaining knowledge of the alleged errors, relieved the Government of any contractual duty to correct alleged billing errors, and requires dismissal of plaintiff's breach of contract claim.

As with exhaustion of statutory administrative remedies, there are sound policy reasons to require the plaintiff to fulfill his contractual duty to submit any claim to the PACER Service

Center.  As the Supreme Court noted in *McKart v. United States*, such reasons "are not difficult to understand."  *Id.*, 395 U.S. 185, 193 (1969).  Since agency decisions "frequently require expertise, the agency should be given the first chance to . . . apply that expertise."  *Id.*  "And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages."  *Id.*; *see Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1214 (Fed. Cir. 2001) (citing *McKart* while explaining that administrative remedies are sometimes preferable to litigation because "courts may never have to intervene if the complaining party is successful in vindicating his rights" and "the agency must be given a chance to discover and correct its own errors.").

Here, the alleged billing errors at issue are clearly a matter of highly specific expertise. By plaintiff's own admission, they required him to retain "expert consultants with advanced degrees in computer science and substantial expertise in the field" in order to "discover why and how" the allege overcharge occurred.  CFC Am. Compl. ¶ 36.  Although of no consequence to this motion, the Government believes that the plaintiff's theories regarding the alleged errors are simply incorrect.[6]  If plaintiff would fulfill his contractual obligations and submit a claim for a specific alleged overcharge to the PACER Service Center, he and his experts could engage in a

---

[6]  The United States believes that plaintiff's claims regarding the existence of billing errors arise from plaintiff's misunderstanding of the actual number of bytes "extracted" in preparation of a docket report, a value that is not included in PACER statements.  It is unclear from the amended complaint how plaintiff derived or calculated the values he uses for the amount of bytes extracted.  If claims for particular alleged overcharges were submitted in accordance with the alleged contract, representatives of the PACER Service Center could show plaintiff and/or his experts the actual number of bytes that were extracted in preparing specific docket reports. Similarly, PACER representatives explained to Mr. Malamud that the AO's billing was "correct."  *See* @carlmalamud, Twitter (Jan 3, 2016, 8:17PM) https://twitter.com/carlmalamud/status/683917949502005249.

dialogue with experts at the PACER Service Center and allow the agency to exercise its expertise regarding the workings of the PACER system and respond directly to plaintiff's concerns about the accuracy of the PACER formula as applied to his actual usage. Such a result is required by the contract, and would also be more efficient than testing plaintiff's speculative theories in Court.

Plaintiff amended his complaint to include a claim that he exhausted all administrative remedies by "vicariously" notifying the AO of the alleged errors, presumably via Mr. Malamud's correspondence. CFC Am. Compl. ¶¶ 26-28; 56. To the extent the plaintiff claims that as "member of the putative class," Mr. Malamud's submission satisfied his requirement to submit a claim, he is incorrect. *Id.* ¶ 26. In order to establish standing, a class representative cannot rely on actions of potential class members. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"); *see Sierra Club v. Morton*, 405 U.S. 727 (1972). Plaintiff cannot rely on Mr. Malamud's claim to avoid his obligation to submit his own claims to the PACER Service Center.

Mr. Malamud's encounter with the AO only serves to highlight why it would serve judicial economy to require the plaintiff to fulfill his contractual obligation to submit claims to the Service Center. Mr. Malamud, often a critic of PACER, presented a claim to the PACER Service Center for $0.40 in connection with what plaintiff claims are identical errors to the ones alleged here. CFC Am. Compl. ¶¶ 26-28. Per the CFC Amended Complaint, he then engaged in a written back and forth with the AO regarding these claims. *Id.* Mr. Malamud also personally met with AO personnel, who explained the process to him. *See* @carlmalamud, Twitter (Jan 3, 2016, 8:17PM) https://twitter.com/carlmalamud/status/683917749502005249 (noting that the

AO "told" him why "their billing is correct").  The CFC Amended Complaint makes no allegation that this matter was not resolved to Mr. Malamud's satisfaction, nor does it even allege that Mr. Malamud's *claim was not paid* by the AO.  As noted above, plaintiff was free to submit any of his alleged claims to the Service Center and could have engaged in a dialogue similar to Mr. Malamud's.  His failure to do so, and instead seek class action damages in a lawsuit, is not only inefficient, it breaches a condition precedent to payment under the express terms of the alleged contract.  The Court should dismiss plaintiff's breach of contract claim for failure to submit his claims to the Service Center.

## III.  PLAINTIFF'S IMPLIED BREACH CLAIM IS DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM

When he amended his complaint, plaintiff added an additional cause of action for breach of the implied duty of good faith and fair dealing.  CFC Am. Compl. ¶¶ 60-69.  In this new claim, Plaintiff alleges only that the implied duty was breached when the United States overcharged him for printing docket sheets.  *Id.* ¶ 68.[7]  This is, almost verbatim, the exact same grounds upon which plaintiff alleges that the United States breached the purported contract.  *Id.* ¶58.[8]  Because the claims are identical, the Court should dismiss plaintiff's implied duty claim.

This Court has held that an implied duty of good faith and fair dealing exists in Government contracts.  *See Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005).  That duty includes "the duty not to interfere with the other party's performance and not to act so

---

[7] "By knowingly and repeatedly charging Plaintiff and the Class more than $0.10 per page for accessing docket reports in HTML format by miscounting the number of extracted bytes in each docket, the United States breached the implied covenant of good faith and fair dealing." *Id.* ¶ 68.

[8] "By charging Plaintiff and the Class more than $0.10 per page for accessing docket reports in HTML format by miscounting the number of extracted bytes in each docket, the United States violated the express terms of the contract."  *Id.* ¶ 58.

as to destroy the reasonable expectations of the other party regarding the fruits of the contract."
*Id.* However, that duty "cannot be used to expand a party's contractual duties beyond those in its express contract." *Id.* at 1306; *see Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014) (duty of good faith and fair dealing "cannot 'create duties inconsistent with the contract's provisions.'") (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010)). In general, "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *Century Exploration New Orleans, LLC v. United States*, 745 F.3d 1168, 1179 (Fed. Cir. 2014).

This Court has considered this issue before, and dismissed the duplicative implied breach claim. *See Kellogg Brown & Root Servs., Inc. v. United States*, 109 Fed. Cl. 288 (2013). In that case, the Court considered an implied breach claim based on the allegation that the defendant breached the duty of good faith and fair dealing by violating a contractual provision and applicable regulations. *Id.* at 299. The Court found that if plaintiff was correct that the contract had been breached, "there is accordingly no need to resort to the implied duty of good faith and fair dealing to infer any obligations into the contract." *Id.* at 300. If, on the other hand, defendant was correct in its contractual interpretation, then "the Court cannot use the implied duty of good faith to alter defendant's duties expressed in the contract." Accordingly, "in either case, plaintiff has not pled facts sufficient to support a claim for breach of the implied duty of good faith and fair dealing." *Id*.

The situation is identical here. If the AO breached the alleged contract by overcharging the plaintiff, then plaintiff's breach claim governs. If the United States is correct in its interpretation and there was no breach, then the Court could not use the implied duty to alter the

express requirements of the contract. As in *Kellogg Brown & Root*, the Court should dismiss plaintiff's implied duty claim.[9]

## IV. PLAINTIFF HAS NOT ALLEGED A STATUTORY REMEDY THAT SUPPORTS AN ILLEGAL EXACTION CLAIM

To invoke this Court's jurisdiction over an illegal exaction claim under the Tucker Act, 28 U.S.C. § 1491, "a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)).[10]

Here, plaintiff's illegal exaction claim fails because that claim expressly alleges that the terms of the PACER User Manual and "policies and procedures promulgated by the AO" are part of the statute or provision causing the exaction. Compl. ¶ 75-76, 79. That manual and those regulations, however, require all claims regarding billing errors to be submitted to the PACER Service Center. The complaint does not allege that the plaintiff took the necessary steps to receive a refund: submitting the requisite paperwork to the PACER Service Center. Accordingly, plaintiff has failed to allege that the statute and associated regulations provide a remedy for the specific exactions he alleges.

---

[9] Because plaintiff's breach of contract claim is identical to his implied breach claim, plaintiff cannot cure his breach claim by amending the compliant to cite the newly added implied breach claim as an "excuse" for his lack of performance. *See* CFC Am. Compl. ¶ 55.

[10] Because the allegation of a proper statute or provision is a jurisdictional issue under the Tucker Act, defendant moves to dismiss the claim under RCFC 12(b)(1). Dismissal is also warranted under RCFC 12(b)(6), because, even if jurisdiction is present under the Tucker Act, plaintiff has alleged a statutory/regulatory framework that expressly requires his claims to be submitted to the PACER Service Center. *See Kipple v. United States*, 102 Fed. Cl. 773, 779 (2012).

Plaintiff cites the "E-Government Act of 2002, the Electronic Public Access Fee Schedule" as well as "further policies and procedures promulgated by the AO in the PACER User Manual," along with "other related policies and procedures promulgated by the AO" as the basis for his exaction claim. Compl. ¶¶ 75-76. He then alleges that these laws and regulations "lead to the ineluctable conclusion that they provide a monetary remedy for fees charged in excess of the prescribed limits." *Id.* ¶ 76. Such a conclusion is far from ineluctable and, other than simply quoting excerpts from the statute about what the Judicial Conference and AO may do, plaintiff does not explain why the statutes provide grounds for an illegal exaction claim in the case where a claim is not presented to the PACER Service Center in the manner prescribed by the statutory regime. *See id.* ¶ 74.[11]

In fact, plaintiff's proposed remedy – the return of all monies (regardless of whether claims are presented to the PACER Service Center) – is contrary to the express terms of the AO's policies and procedures and the PACER User Manual. The framework alleged by the plaintiff expressly limits the monetary remedy to those claims that are submitted to the PACER Service Center within 90 days of the bill. Pacer Policy (users "must alert the PACER Service Center to any errors in billing within 90 days of the date of the bill"); PACER User Manual at 5 ("If you think there is an error on your bill, you must submit the Credit Request Form.").

Plaintiff's claim is dependent on the inclusion of the PACER User Manual and other AO policies and procedures, including the PACER Policy, because his cited statutory authority states only that the Director of the AO and the Judicial Conference may "prescribe reasonable fees" for

---

[11] In addition, the statutory authority cited by plaintiff expressly recognizes that the PACER Service Center is a part of the regulatory framework, by including "PACER Service Center" fees as part of the "the Electronic Public Access Fee Schedule" included in the law. *Id.*; *see* Compl. ¶ 76 (listing the "Electronic Public Access Schedule" as a source of authority that plaintiff alleges "provide" a remedy for his claim).

PACER information, 28 U.S.C. § 1913, and that those fees are $0.10 per "page" for docket reports, not to exceed thirty pages. 28 U.S.C. §§ 1913, 1914, 1926, 1930, 1932. This language, standing alone, is insufficient to create the remedy of return of all possible claims (including those not submitted to the AO). *See Norman*, 429 F.3d at 1096 (dismissing claim where law did not "directly result in an exaction").

Instead, the policies and procedures of the AO are a necessary part of the framework supporting plaintiff's alleged exaction. The fact that a "page" for purposes of docket reports is calculated using a formula that equates a certain number of bytes extracted with one billable page is essential to plaintiff's exaction claim. *See* Compl.¶¶ 2-3, 24, 25, 37-40, 74-76. As admitted by the plaintiff, that formula exists only in the PACER User Manual and other AO policies and procedures. *See Id.* ¶¶ 24-25.

Those same policies and procedures, however, are fatal to plaintiff's exaction claim, because they also require claims to be submitted to the PACER Service Center within 90 days of the date of the bill. Accordingly, plaintiff's illegal exaction claim fails for lack of remedy.

## **CONCLUSION**

For the foregoing reasons, defendant requests the Court dismiss plaintiff's complaint.

Respectfully Submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/Peter A. Gwynne
PETER A. GWYNNE
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 616-8239
Facsimile:  (202) 514-8640
E-mail:  peter.a.gwynne@usdoj.gov

June 15, 2016                    Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 15th day of June, 2016, a copy of the foregoing "MOTION TO DISMISS" was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Peter A. Gwynne